NORTHERN WESTCHESTER PROFESSIONAL PARK ASSOCIATES, Respondent-Appellant, v TOWN OF BEDFORD, Appellant-Respondent.

Second Department, March 21, 1983

APPEARANCES OF COUNSEL

*James F. Donohue* (*McCarthy, Fingar, Donovan, Glatthaar, Drazen & Smith* [*Henry J. Smith* and *James G. Fine*] of counsel), for appellant-respondent.

*Shamberg, Bender, Marwell & Cherneff, P. C.* (*Stuart R. Shamberg, Robert F. Davis* and *Martin Bender* of counsel), for respondent-appellant.

OPINION OF THE COURT

MOLLEN, P. J.

At issue here is whether the zoning ordinance of the Town of Bedford is arbitrary or confiscatory as applied to plaintiff's property. Plaintiff demanded a declaratory judgment to that effect, and sought money damages as well. After a nonjury trial, Special Term dismissed plaintiff's cause of action for money damages, but otherwise sustained plaintiff's claims by issuing a judgment declaring, *inter alia,* that "the Zoning Ordinance of the Town of Bedford in existence on the date hereof is illegal, invalid and unconstitutional insofar as it applies to the real property of Plaintiff".

In our view, the evidence at trial was insufficient to establish that the ordinance, as applied to plaintiff's property, has no substantial relationship to public health, safety, morals or general welfare, or that the property, as presently zoned, will not yield a reasonable return. Accordingly, we modify by deleting so much of the judgment as declared the ordinance unconstitutional, and we declare that, as applied to the plaintiff's property, the ordinance is not unconstitutional.

The subject property is a parcel of approximately 12.6 acres, of which .9 acres are located in the Town/Village of Mount Kisco. The remaining 11.7 acres are located in the Town of Bedford. The parcel, bounded on the south by Route 172, and on the east by McLain Street, lies in a two-acre residential zone and is improved by two residential dwellings. The land along McLain Street to the north and east of the subject property is also in a two-acre residential zone and is developed consistent with that zoning. Pursuant to a special use permit, the land across McLain Street from the subject property is occupied by a boys' school and study center.

To the southwest, the subject property is bounded by a parcel, also owned by plaintiff, which the Town of Bedford rezoned in 1965 from two-acre residential use to profes-

sional-business-office use. That parcel is occupied by two medical buildings and two office buildings. The land to the west of the subject property is located in the Town/Village of Mount Kisco in a "research-office" use zone. The land to the southeast, across Route 172, is also located in Mount Kisco and is zoned for multifamily residential use, office development, and a marsh preserve.

Plaintiff purchased the subject property in 1978 for a total price of $265,000. In February, 1979 plaintiff petitioned the Town Board of the Town of Bedford to rezone the subject property as a "planned business-office park", suggesting as a condition that access to and from the subject property be limited to Route 172. The Bedford Planning Board recommended rezoning to "PB-O" professional business office use, upon the additional condition that plaintiff erect a buffer of at least 100 feet between the subject property and adjacent residential property. The Mount Kisco Planning Board, however, objected to the proposed rezoning on the grounds that the proposed development's impact on traffic flow had not been adequately considered, that the intensity of development in the proposed zone is some four times greater than the intensity permitted to the southeast of the subject property, and that the buffer areas proposed by the Bedford Planning Board were inadequate. The Westchester County Planning Board also objected on the grounds that the proposed zoning was contrary to the town's master plan, and that Route 172 lacked the capacity to accommodate the traffic which would be generated by full development of the subject property for business-office use. On or about November 28, 1979, plaintiff's application for rezoning was denied.

Thereafter, plaintiff commenced the instant action seeking, *inter alia*, a judgment declaring that the zoning ordinance of the Town of Bedford, as applied to the subject property, was unconstitutional in that it is both arbitrary and confiscatory. At trial, expert testimony was offered to demonstrate that the residential character of the land to the north and northeast of the subject property would be adequately protected if access to and from the subject property were restricted to Route 172 with no access onto McLain Street and if a permanent buffer were erected

between the subject property and adjacent residential property.

On the question of traffic congestion on Route 172, however, plaintiff's witness, George Raymond, acknowledged that the development of the subject property for office use would generate 3,500 cars per day. According to the witness, in the peak hour of the morning, the proposed development would generate 600 cars per day, constituting 18% of the capacity of Route 172; in the peak hour of the evening, the proposed development would generate 525 cars, constituting 14% of Route 172's capacity. There was testimony that, by the year 2005, Route 172 will not have sufficient capacity to accommodate traffic generated by this proposed development, and by other proposed developments along that route. The Commissioner of Planning of Westchester County noted that any decision to widen Route 172 would have to come from the State. The State Department of Transportation had no plans to improve the relevant portions of Route 172, between Route 117 and Interstate 684.

On the question of value, plaintiff's experts testified that the value of the property, as presently zoned, is between $140,000 and $170,000, while, if rezoned, the property would be worth in excess of $900,000. Plaintiff explored the possibility of subdividing the subject property into five residential lots, and estimated the cost of physical improvements necessary for subdivision as $61,500. One of plaintiff's witnesses concluded that if the property were subdivided into five residential lots, its total value would be $265,000. Nevertheless, after taking into consideration the costs of subdivision, including $61,500 for physical improvements and $25,000 for engineering and legal fees, he determined that the value of the subject property as is, was only $140,000. Another witness for plaintiff determined that the subject property is currently worth $170,000. He estimated that the land, after subdivision, would be worth $230,000, and he opined that the smaller of the two residential dwellings on the property was salvageable, and worth $30,000. Thus, he estimated that the total value of the land, after subdivision, plus improvements, was $260,000. In arriving at the lower figure of

$170,000, he took into consideration the costs of the physical improvements necessary for subdivision, but, in so doing, he apparently overstated those costs by nearly $30,000. A third witness for plaintiff testified that the smaller residential dwelling on the property was worth between $60,000 and $65,000. Nevertheless, she concluded that the subject property was worth only between $150,000 and $160,000.

Defendant's appraiser, using the comparable sales method, determined that the property was worth $296,500. He acknowledged, however, that none of the allegedly comparable parcels was in close proximity to office buildings.

Special Term found that the zoning ordinance, as applied to plaintiff's property, is both arbitrary and confiscatory. It was held arbitrary because the Town of Bedford was unable to "demonstrate that the public health, safety and welfare of the community is threatened if existing zoning regulations fall" and confiscatory because plaintiff is deprived of any reasonable use of its land. We disagree with the court's holding because we find that plaintiff has failed to demonstrate that the ordinance is either arbitrary or confiscatory.

In reaching its determination, Special Term relied on the principles enunciated in *Matter of Fulling v Palumbo* (21 NY2d 30). These principles, however, apply to area restrictions only, and not to use restrictions (see *Matter of National Merritt v Weist,* 41 NY2d 438). Where a use restriction is involved, the party challenging the validity of the ordinance as arbitrary must establish, beyond a reasonable doubt, that the ordinance has no substantial relationship to public health, safety, morals or general welfare (see *Town of Huntington v Park Shore Country Day Camp of Dix Hills,* 47 NY2d 61, 65; *Curtiss-Wright Corp. v Town of East Hampton,* 82 AD2d 551, 555). An ordinance whose constitutionality is "fairly debatable" should be upheld (see *Williams v Town of Oyster Bay,* 32 NY2d 78, 81; *Curtiss-Wright Corp. v Town of East Hampton, supra,* p 555; *Gerzof v Town of Huntington,* 8 AD2d 841, affd 8 NY2d 788). Stated otherwise, the ordinance may not be declared invalid if it is "reasonably related to some mani-

fest evil which \* \* \* need only be reasonably apprehended" (see *Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11; *Town of Huntington v Park Shore Country Day Camp of Dix Hills, supra*). In its decision, Special Term acknowledged that "[t]here was a great deal of testimony at the trial concerning the present capacity of Route 172 and the future ability of Route 172 to handle the traffic which will result from the present and contemplated development in the area." Nevertheless, Special Term found that the testimony conclusively demonstrated that the development of plaintiff's property for office use will not have a significant effect on the capacity of Route 172. This finding is plainly unsupported by the record.

■ Plaintiff's own evidence established that it could be reasonably apprehended that the abrogation of the use restriction on the subject property would lead to the generation of traffic on Route 172 in excess of its capacity. Nor would access to the property from McLain Street provide a satisfactory solution since it would likely result in the destruction of the residential character of McLain Street. Thus, plaintiff failed to establish that the zoning ordinance, as applied to the subject property, is arbitrary.

On the question of whether the ordinance is confiscatory as applied to the subject property, plaintiff was required to submit "dollars and cents" proof to establish beyond a reasonable doubt that the property, as presently zoned, will not yield a reasonable return (see *Matter of Village Bd. of Vil. of Fayetteville v Jarrold,* 53 NY2d 254, 258; *Matter of National Merritt v Weist,* 41 NY2d 438, 445, *supra; Russo v Town of East Hampton,* 87 AD2d 607). The fact that the owner could obtain a "substantially higher value \* \* \* if an alternate use is permitted" is not determinative (see *McGowan v Cohalan,* 41 NY2d 434, 436; *Curtiss-Wright Corp. v Town of East Hampton, supra,* p 554). The owner must submit proof of the market value of the property at the time of the acquisition as well as the value of the property as presently zoned (see *Curtiss-Wright Corp. v Town of East Hampton, supra*).

Plaintiff's proof is deficient in several respects. There is no evidence in this record as to what the property was worth when plaintiff purchased it. The purchase price

itself is not necessarily indicative of value, since, for example, if plaintiff paid a premium for the property, based on its assumption that it would be rezoned, that premium may not be taken into account (see *Chusud Realty Corp. v Village of Kensington,* 40 Misc 2d 259, 261, affd 22 AD2d 895). The fact that the property would be worth in excess of $900,000 if zoned for office development does not demonstrate that the $140,000 to $170,000 market value set by plaintiff's experts was unreasonable. That the property would be worth more if it were differently zoned is insufficient to overcome the presumption that the zoning ordinance is valid (see *Schwartz v Lee,* 28 AD2d 921, affd 22 NY2d 743).

■ Moreover, plaintiff's proof of value, which was marred by inconsistencies, included testimony indicating that it could in fact secure a reasonable return on the property. For example, one of plaintiff's witnesses testified that the land, subdivided into five residential lots, would be worth $230,000, while another witness concluded that the smaller residential dwelling is worth between $60,000 and $65,000, and it was estimated that the physical improvements necessary for subdivision would cost $61,500. Accepting each of those opinions leads to the conclusion that the subject property, as presently zoned, is worth approximately $230,000, only $35,000 less than the purchase price. Thus, it cannot be said that plaintiff established beyond a reasonable doubt that the ordinance was confiscatory. In its decision, however, Special Term ignored these defects in the plaintiff's case, and chose instead to focus on alleged deficiencies in defendant's appraisal.

Finally, plaintiff failed to submit "dollars and cents" proof that the subject property could not yield a reasonable return if it were used for certain nonresidential uses, permitted by special permit (see Town of Bedford Zoning Ordinance of 1946, amd to June 18, 1968, art IV, § 1, subds C, D, K; see *McGowan v Cohalan,* 41 NY2d 434, 437, *supra;* cf. *Matter of Grimpel Assoc. v Cohalan,* 41 NY2d 431).

In light of these deficiencies, we hold that plaintiff failed to satisfy its heavy burden of rebutting the presumption

that the zoning ordinance is constitutional as applied to the subject property.

LAZER, MANGANO and BROWN, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered October 13, 1981, modified, on the law and facts, by deleting all but the seventh decretal paragraph thereof and adding a provision thereto declaring that the zoning ordinance of the Town of Bedford, as applied to the plaintiff's property, is not unconstitutional. As so modified, judgment affirmed, with costs against the plaintiff.